**Michelle McLAUGHLIN and Tommy McLaughlin, w/h, Plaintiffs,**

v.

**ROSE TREE MEDIA SCHOOL DISTRICT, et al., Defendants.**

**No. CIV.A. 97–5088.**

United States District Court, E.D. Pennsylvania.

April 22, 1998.

Gilda L. Kramer, Philadelphia, PA, for Plaintiffs.

Deborah J. Nathan, Michael I. Levinson & Assoc., Huntington Valley, PA, for Defendants.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

Presently before the Court is a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6) submitted by defendants, Rose Tree Media School District and William T. Gamble. This action arises from a Complaint filed by Plaintiffs, Michelle McLaughlin ("McLaughlin") and Tommy McLaughlin asserting against the various defendants the following: Counts I–III assert claims under Title VII, 42 U.S.C. § 2000e, *et seq.;* Counts IV and V assert claims for civil rights violations pursuant to 42 U.S.C. § 1983; Count VI asserts claims under the Pennsylvania Human Relations Act ("PHRA"), 43 Pa.C.S.A. § 951, *et seq.;* Count VII asserts claims for Intentional Infliction of Emotional Distress; Count VIII asserts a claim for assault and battery; and Count IX asserts claims for loss of consortium.

Defendant Rose Tree Media School District asks this Court to dismiss Counts IV, V, and VI as well as all punitive damages claims against it, and defendant William T. Gamble asks this Court to dismiss Counts IV, V, VI, and VII as well as the punitive damages claims against him. For the following reasons the Motion is Denied in Part and Granted in Part.

## BACKGROUND

Plaintiff, Michelle McLaughlin ("McLaughlin" or "plaintiff"), has been employed as a custodian at Penncrest High School ("Penncrest") in the Rose Tree Media School District since 1990. The defendants are Rose Tree Media School District ("Rose Tree" or the "school district"), and three of its former employees, Anthony R. Hicks ("Hicks"), the principal of Penncrest; William T. Gamble ("Gamble"), the assistant principal of Penncrest; and Thomas K. Simpson ("Simpson"), the head custodian at Penncrest.

McLaughlin's complaint alleges that she and other women employees of the school district experienced sexual harassment during a six-year period consisting of a pervasive pattern and practice of *quid pro quo* and a hostile and offensive work environment. Plaintiff alleges that from 1990 until January 26, 1996,[1] Simpson, her direct supervisor, sexually harassed her and other female custodians. Among some of the alleged acts by Simpson are that: he publicly sexually assaulted female custodians by touching their breasts, buttocks, and crotch areas; made inappropriate sexual comments, including bragging about the size of his penis and sexual prowess; questioned employees about their preferred positions while engaging in sexual intercourse; kept pornographic photos in his office which he showed to female employees; and exposed himself to one female custodian. Additionally, Simpson allegedly regularly and repeatedly issued threats of retaliation and intimidation toward employees.[2]

Further, Simpson allegedly gave favorable treatment to one female employee, Florence McClaren, who allegedly submitted to Simpson's sexual advances while McLaughlin received less favorable treatment due to her refusal of Simpson's advances.

Beginning in 1993, McLaughlin and other female employees complained to Gamble about Simpson's sexual harassment and the favoritism shown to the employee who allegedly acquiesced. However, Gamble did nothing to stop the harassment. Instead, it is alleged that Gamble and Simpson together retaliated against McLaughlin for complaining.

It is further alleged that Hicks, the principal of Penncrest, sexually harassed McLaughlin and, using his official status as principal, forced himself on McLaughlin and had sexual intercourse with her. Although Hicks continued to pursue McLaughlin, she rebuffed his advances. Hicks then repeatedly came to McLaughlin's work area to ask if her husband was away, hit McLaughlin on the bottom, tried to kiss her, and told her he

---

1. Simpson was suspended by Rose Tree on January 26, 1996.

2. Most of these facts are undisputed against Simpson as they were part of factual findings made by defendant Rose Tree when it investigated Simpson's conduct in 1996. Rose Tree's investigation resulted in the termination of Simpson.

was "the boss." Subsequent to this harassment and to McLaughlin's continued rejection, Hicks took adverse employment action against McLaughlin.

McLaughlin alleges that she was subjected to retaliation by Simpson, Gamble, Hicks, and Rose Tree for complaining about this sexual harassment and for pursuing this sexual harassment claim.

## I. Legal Standard

In considering a 12(b)(6) motion,[3] a court must primarily consider the allegations contained in the complaint, although matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may also be taken into account. *Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993). The Court must accept as true all of the allegations in the pleadings and must give the plaintiff the benefit of every favorable inference that can be drawn from those allegations. *Schrob v. Catterson*, 948 F.2d 1402, 1405 (3d Cir.1991); *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990). A complaint is properly dismissed only if it appears certain that the plaintiff cannot prove any set of facts in support of its claim which would entitle it to relief. *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir.1988).

## II. Plaintiffs' § 1983 Claim

■ Defendants[4] argue that Counts IV and V of plaintiffs' complaint, which allege claims under § 1983, must be dismissed against them. Defendants reason that plaintiffs' § 1983 claims are subsumed by plaintiffs' claims under Title VII, which contains it own, exclusive, remedial scheme.

In *Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1, 20, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981), the Supreme Court held that when a federal statute has its own comprehensive enforcement and remedial scheme, that scheme is the exclusive remedy for violations of the statute. *See also Great American Federal Savings & Loan Association v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979). This, so called, *"Sea Clammers"* rule has been applied by at least one circuit court to situations where a party attempts to bring a Title VII claim using the framework of § 1983. *See Irby v. Sullivan*, 737 F.2d 1418, 1428 (5th Cir.1984). Similarly, our Court of Appeals has applied the *Sea Clammers* Rule to find that a plaintiff's § 1983 claims were subsumed under that plaintiff's Title IX claims. *Pfeiffer v. Marion Center Area School District*, 917 F.2d 779, 789 (3d Cir.1990); *see also Williams v. School District of Bethlehem*, 998 F.2d 168, 176 (3d Cir.1993) (applying *Sea Clammers* to hold plaintiff's equal protection claims was subsumed by Title IX claim); *Bougher v. University of Pittsburgh*, 713 F.Supp. 139, 145–46 (W.D.Pa.1989), *aff'd* 882 F.2d 74 (3d Cir.1989) (applying *Sea Clammers* to hold that plaintiff's substantive due process rights were subsumed by her Title IX claim).

The distinction, however, between the cited cases and the instant case is that McLaughlin has a separate basis upon which her § 1983 claim rests. Because sexual harassment has been determined to be sex discrimination that can violate the Fourteenth Amendment right to equal protection, *see Andrews v. City of Philadelphia*, 895 F.2d 1469 (3d Cir.1990); *Starrett v. Wadley*, 876 F.2d 808, 814 (10th Cir.1989); *see also Davis v. Passman*, 442 U.S. 228, 235, 99 S.Ct. 2264, 2271–72, 60 L.Ed.2d 846 (1979), there is a separate constitutional right—equal protection—which serves as the basis for McLaughlin's § 1983 claim. *See Bougher*, 713 F.Supp. at 145–46 (§ 1983 action not subsumed under Title IX if there is a separate constitutional or statutory basis); *see also Sharp v. City of Houston*, 960 F.Supp. 1164, 1176–77 (S.D.Tex. 1997) ("plaintiff can pursue a remedy under § 1983 as well as under Title VII when the

---

3. Defendants have also brought a 12(b)(1) motion to dismiss for lack of jurisdiction. As this claim is largely dependent on the Court's resolution of the various substantive claims, it will be discussed with those claims where necessary and applicable.

4. The use of "defendants" hereinafter refers to Rose Tree and Gamble only.

employer's conduct violates both Title VII and a separate *constitutional or statutory right*") (emphasis in original).

McLaughlin is not attempting to vindicate her rights created by Title VII under § 1983; she is pursuing a Title VII claim to vindicate rights created by Title VII. *See* (Pl.'s Compl. at Counts I, II, and III). Instead, McLaughlin is attempting to vindicate her constitutional right to equal protection in her § 1983 claim. *See* (Pl.'s Compl. at Counts IV and V); *see also Novotny*, 99 S.Ct. at 2350–51 (finding § 1985 claim is subsumed under Title VII claim where the § 1985 claim is only asserting a violation of a right created by Title VII not a separate right). Thus, McLaughlin's § 1983 claims are not subsumed under the Title VII claims. Therefore, defendants' Motion to Dismiss Counts IV and V on this basis is denied.

## III. Specificity of § 1983 Claims

Defendants further seek dismissal of Counts IV and V, which state claims under § 1983, arguing that these counts are not plead with an adequate level of specificity.

■ The Supreme Court in *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 167–68, 113 S.Ct. 1160, 1162–63, 122 L.Ed.2d 517 (1993), held that the liberal notice pleading requirements of Federal Rule of Civil Procedure 8(a)(2) applies to § 1983 claims. In so doing, the Court rejected the notion that a heightened particularity requirement, such as that annunciated in Rule 9(b), applies to § 1983 claims. Thus, in order to properly plead a claim under § 1983 there must be a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.Civ.P. 8(a)(2). Plaintiff's allegations in Counts IV and V of the complaint meet this standard.[5] Therefore, defendants' Motion to Dismiss Counts IV and V is denied on these grounds as well.

## IV. § 1983 Claim Against Gamble

Defendant, Gamble, argues that plaintiff's § 1983 claims in Counts IV and V cannot be sustained against him because the alleged conduct of Gamble is outside the two year statute of limitations and because plaintiff has not established that Gamble, as an individual, acted with the requisite indifference to the consequences or with a maintained policy, practice or custom which directly caused her harm.

### A. Statute of Limitations

■ Gamble argues that the § 1983 claim in plaintiff's complaint must be dismissed as to him as the conduct alleged in the complaint is outside the two year statute of limitations. Gamble reasons that the complaint only alleges that he failed to act when he learned of the sexual harassment in 1993. Because the applicable statute of limitations is two years and since plaintiff has alleged that Gamble was told of the sexual harassment in 1993, this conduct is outside of the applicable statute of limitations. Plaintiff responds that the complaint sufficiently alleges conduct, including both failure to act and retaliation, which supports that the conduct alleged against Gamble continued from at least 1993 until January 26, 1996.

We agree that the complaint sufficiently states a claim to satisfy the statute of limitations. Therefore, defendant Gamble's Motion to Dismiss Counts IV and V due to the statute of limitations is denied.

### B. Liability of Gamble Under § 1983

■ Defendant Gamble also argues that plaintiff's § 1983 claims against him should be dismissed for failure to state a claim. Gamble argues that in order to maintain a claim against an individual employee under § 1983, a plaintiff must establish that the employee acted with deliberate indifference to the consequences and established and maintained a policy, practice or custom which directly caused her constitutional harm. (Def.'s Mem. at 11). Gamble further argues

---

5. This is not a case like *Bieros v. Nicola*, 860 F.Supp. 223 (E.D.Pa.1994) where the complaint was so devoid of factual details concerning the contents of the alleged false information that the

defendants could not respond to the complaint in good faith. *See generally Hides v. CertainTeed Corp.*, 1995 WL 458786, *1 (E.D.Pa.).

that the type of conduct which must be averred is affirmative conduct by the individual and that failure to act is insufficient to state a claim.

Defendants are correct that "[s]upervisory liability cannot be based solely upon the doctrine of respondeat superior" and that "there must be some affirmative conduct by the supervisor that played a role in the discrimination." *Andrews*, 895 F.2d at 1478 (citing *Rizzo v. Goode*, 423 U.S. 362, 377, 96 S.Ct. 598, 607, 46 L.Ed.2d 561 (1976)). "The necessary involvement can be shown in two ways, either 'through allegations of personal direction or of actual knowledge and acquiescence,' *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988), or through proof of direct discrimination by the supervisor." *Andrews*, 895 F.2d at 1478.

In *Andrews*, the Third Circuit found that a supervisor who "was aware of the problems concerning foul language and pornographic materials but did nothing to stop them;" who "took no measures to investigate the missing case problems" of the female officers when the male officers were not experiencing the same problems; and who displayed a "boys will be boys" attitude toward the sexual harassment could be found to have acquiesced in the sexual discrimination of the female officers. *Id.* at 1479. Another supervisor in *Andrews* who was similarly aware of the sexual harassment was also found to have condoned the actions of the male colleagues. *Id.; see also Stoneking v. Bradford Area School District*, 882 F.2d 720, 730 (3d Cir. 1989) (holding "mere failure of supervisory officials to act or investigate cannot be basis of liability," but such officials could not "with impunity maintain a custom, practice or us-

age that communicated condonation or authorization of assaultive behavior").

Plaintiff argues that Gamble's failure to investigate and to stop the continuing harassment is sufficient to qualify as "acquiescence" to support a claim for supervisor liability under § 1983 and that Gamble also retaliated against her.

We find that, taking the totality of the allegations in plaintiff's complaint, she has sufficiently pled a cause of action against Gamble for supervisory liability under § 1983.[6] *See* Fed.R.Civ.P. 8(a)(2) & 12(b)(6).[7]

## V. PHRA Claims Against Gamble

■ Defendant Gamble argues that the Court does not have jurisdiction over the PHRA claim against Gamble in Count VI of plaintiff's complaint because plaintiff did not name him as a defendant or specifically make allegations against him in the PHRA charge. Plaintiff responds that Gamble is in no way prejudiced by not being named in the administrative proceeding. Plaintiff, relying on *Glus v. G.C. Murphy Co.*, 629 F.2d 248, 251 (3d Cir.1980), argues that because a number of the *Glus* factors are applicable and satisfied the purposes behind requiring naming are met.[8]

Generally, a Title VII action may not be maintained against a defendant who was not named as a defendant in the EEOC complaint.[9] *See Glickstein v. Neshaminy School District*, 1997 WL 660636, *10–*11 (E.D.Pa.); *Duffy v. Southeastern Pennsylvania Transportation Co.*, 1995 WL 299032, *2 (E.D.Pa.); *Timmons v. Lutheran Children*, 1993 WL 533399, *4 (E.D.Pa.). Although the PHRA

---

6. Presently, we are only at the pleading stage and presented with a motion to dismiss, not a motion for summary judgment.

7. Given the Court's resolution of the federal claims against Gamble, it is not necessary for the Court to reach defendants' argument that the pendent state law claims should be dismissed for lack of jurisdiction.

8. Plaintiff argues that the *Glus* exception applies because the interests of Gamble and Rose Tree Media are sufficiently similar that the absence of Gamble would not have hampered the conciliation and compliance procedures; that Gamble

has not shown how he is in any way prejudiced by not being specifically named in the PHRA charge; Gamble has represented to McLaughlin that his relationship with her is to be through Rose Tree; and Gamble is represented by the same counsel who represented Rose Tree before the Pennsylvania Human Relations Commission ("PHRC") and who represents them both in the instant action. *See Glus*, 629 F.2d at 251.

9. This is a jurisdictional prerequisite to institution of suit against that party. *See Carter–Herman v. City of Philadelphia*, 1995 WL 764574 (E.D.Pa.).

does not contain an analogous requirement, courts have held that the PHRA should be interpreted consistently with Title VII. *See Glickstein*, 1997 WL 660636 at *10 (applying jurisdictional requirement of EEOC to PHRA); *see also Carter–Herman v. City of Philadelphia*, 1995 WL 764574, *3 (E.D.Pa.). The purpose of requiring a defendant to be named in the EEOC or PHRA claim is to give that defendant notice of the allegations against it such that the party has an opportunity to resolve the situation without resort to further litigation. *See Timmons v. Lutheran Children*, 1993 WL 533399, *3 (E.D.Pa.). In keeping with the purpose of the rule, the Third Circuit has recognized an exception for situations where the unnamed party has received notice of the allegations and where there is sufficient commonality of interests between the named and unnamed parties. *See Glus*, 629 F.2d at 251; *see also Schafer v. Board of Public Education*, 903 F.2d 243, 252 (3d Cir.1990).

In applying the *Glus* exception, several members of this Court have determined that where a defendant is not named as a defendant in the caption of the administrative proceeding, but is named in the body of the complaint, that defendant has sufficient notice to satisfy the general rule. *See Glickstein*, 1997 WL 660636 at *11; *Timmons*, 1993 WL 533399 at *4. At least one other member of the Court has determined that in as much as the plaintiff is bringing a claim against a defendant in the defendant's official capacity, then lack of being named in the administrative complaint was of no consequence as the official capacity is merely another way of reaching the entity. *See Duffy*, 1995 WL 299032 at *2.

However, on the facts before us, we cannot find that Gamble had sufficient notice of the allegations against him. Neither party has provided the Court with a copy of the PHRA complaint, thus we cannot determine whether Gamble was named in the body of the complaint. Further, the complaint filed by plaintiffs' in this Court fails to specify whether

Gamble is being sued in an official or personal capacity or both.[10] Thus, we cannot determine whether defendant Gamble had sufficient notice of the claims against him to allow him the opportunity to settle prior to initiation of this suit. Therefore, we will grant Gamble's Motion to Dismiss the PHRA claim against him without prejudice.

## VI. Intentional Infliction of Emotional Distress Claim Against Gamble

Defendant Gamble argues that the Intentional Infliction of Emotional Distress claim against him should be dismissed for failure to state a claim. Plaintiff responds that she has sufficiently alleged a cause of action against Gamble because she has alleged sexual harassment and retaliation.

 Plaintiff's claim for intentional infliction of emotional distress is governed by the law of Pennsylvania. The Pennsylvania courts, which have recognized the tort of intentional infliction of emotional distress, have nevertheless approached this area of law cautiously, particularly in the employment context. *See Andrews v. City of Philadelphia*, 895 F.2d 1469, 1486 (3d Cir.1990). In order to state a cognizable claim, the conduct "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir.1988). Moreover, in the employment context, "sexual harassment alone does not rise to the level of outrageousness necessary to make out a cause of action for intentional infliction of emotional distress." *Andrews*, 895 F.2d at 1487. According to *Andrews*, the "extra factor that is generally required is retaliation for turning down sexual propositions." *Id.* But see *Solomon v. City of Philadelphia*, 1996 WL 20651, *3–*4 (E.D.Pa.) (finding that the case law does not restrict the retaliatory conduct "only to retaliation for refusing direct sexual propositions").

---

**10.** The complaint alleges that Gamble was acting within the scope of his employment all relevant times which may be indicative that the claim is against him in his official capacity. *See New v. Turnage*, 1989 WL 149944, *2–*3 (E.D.Pa.).

However, rather than make pleading choices for the plaintiffs, the Court will grant plaintiffs leave to replead with sufficient information for the Court to make a decision should plaintiff choose to do so.

In the instant case, plaintiff has alleged a pattern of sexual harassment and has alleged that Gamble retaliated against her for complaining about the sexual harassment. Thus, plaintiff has sufficiently pled a cause of action of intentional infliction of emotional distress to withstand a 12(b)(6) motion. *See* Fed. R.Civ.P. 8(a); *Pickel v. Palmer Township,* 1997 WL 379167, *4 (E.D.Pa.); *Solomon v. City of Philadelphia,* 1996 WL 20651 at *3– *4; *Carter–Herman v. City of Philadelphia,* 1995 WL 764574, *6–*7 (E.D.Pa.). Defendant Gamble's Motion to Dismiss Count VII is denied.[11]

*VII. Punitive Damages*

Defendants argue that the punitive damages claims against them should be dismissed. Defendant Rose Tree seeks dismissal of the punitive damages claims in the federal claims as well as the state claims based on immunity for a local agency. Defendant Gamble seeks dismissal of the punitive damages claims in the PHRA claim against him.

▇ Punitive damages are not available against a local agency for plaintiff's federal claims under Title VII and § 1983. *See Richerson v. Jones,* 551 F.2d 918, 926–28 (3d Cir.1977) (finding punitive damages not available under Title VII); *Carter–Herman v. City of Philadelphia,* 1995 WL 764574, *7 (E.D.Pa.) (holding that punitive damages not available against a municipality under Title VII or § 1983) (citing *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981)). Therefore, the Court will dismiss the claims for punitive damages under the federal law claims against defendant Rose Tree.

▇ The Court however, at this stage in the proceedings, will allow plaintiffs' punitive damages claims against Rose Tree and Gamble to stand for the PHRA claim. The Court is aware that the Pennsylvania Supreme Court has granted allocator in *Hoy v. Ange-*

*lone,* 456 Pa.Super. 596, 691 A.2d 476, 483 (1997). However, the decisions of this Court have allowed punitive damages under the PHRA, both before and after *Hoy. See Bellack v. County of Montgomery,* 1997 WL 688821, *1 (E.D.Pa.); *Sarko v. Penn–Del Directory,* 968 F.Supp. 1026, 1037 (E.D.Pa. 1997); *Kim v. City of Philadelphia,* 1997 WL 277357, *1–*2 (E.D.Pa.); *Gould v. Lawyers Title Insurance Corp.,* 1997 WL 241146, *1– *2 (E.D.Pa.); *Carter–Herman,* 1995 WL 764574 at *8 (E.D.Pa.); *Slater v. Marshall,* 906 F.Supp. 256 (E.D.Pa.1995). The Third Circuit has also recently declined an opportunity to decide this issue pending the Pennsylvania Supreme Court's ruling in *Hoy. See Rush v. Scott Specialty Gases, Inc.,* 113 F.3d 476, 486 (3d Cir.1997). We will, therefore, allow plaintiffs' punitive damages claim pursuant to the PHRA to proceed, and as Judge Padova suggested in *Bellack,* we will "revisit this issue at a later time in this proceeding in the light of any relevant new developments in Pennsylvania jurisprudence on this issue." 1997 WL 688821 at *1.

▇ Defendant Rose Tree further argues that even if punitive damages are recoverable under the PHRA, it is immune from punitive damages as a local government agency. The law on this question is particularly unclear. However, we note, as Judges Padova and Bartle[12] have previously noted, that 42 Pa. C.S.A. §§ 8541, 8542 does not grant immunity to a local agency where another state statute subjects them to liability. *See Bellack,* 1997 WL 688821 at *2; *Carter–Herman,* 1995 WL 764574 at *8. The PHRA subjects local agencies to liability, and there is no provision in the PHRA that grants them any immunity. *See Carter–Herman,* 1995 WL 764574 at *4. Thus, the question of whether a local agency is subject to punitive damages under the PHRA turns on the resolution of whether punitive damages are available at all under the PHRA and, as previously stated, at this stage we will allow the

---

11. Given this ruling, we will not dismiss the punitive damages claim against Gamble regarding outrageous behavior.

12. In a post trial memorandum in that case, Judge Bartle recognized the possibility that a municipality may be immune from punitive dam-

ages under the PHRA, but did not definitively decide this issue because in that case the jury did not award any punitive damages against the municipality. *See Carter–Herman v. City of Philadelphia,* 1996 WL 745227, *6 (E.D.Pa.).

claims to go forward.[13] *But see Curran v. Philadelphia Housing Authority,* 1997 WL 587371 (E.D.Pa.) (Judge Robreno determined that punitive damages under PHRA were not assessable against the Philadelphia Housing Authority as it was immune due to its status as a government agency).

## VIII. Conclusion

An appropriate Order follows.

## ORDER

AND NOW, this 22nd day of April, 1998, upon consideration of Defendants' Motion to Dismiss and Plaintiffs' Response thereto, it is hereby ORDERED that, in accordance with the foregoing Memorandum, the Motion is DENIED IN PART and GRANTED IN PART as follows:

1) Defendant Rose Tree Media School District's Motion to Dismiss Counts IV and V is DENIED;

2) Defendant Rose Tree Media School District's Motion to Dismiss punitive damages claims in the federal claims against them is GRANTED;

3) Defendant Rose Tree Media School District's Motion to Dismiss the punitive damages claims against them in the PHRA claim is DENIED;

4) Defendant William T. Gamble's Motion to Dismiss Counts IV and V is DENIED;

5) Defendant William T. Gamble's Motion to Dismiss Count VI is GRANTED WITHOUT PREJUDICE;

6) Defendant William T. Gamble's Motion to Dismiss Count VII is DENIED;

7) Defendant William T. Gamble's Motion to Dismiss the punitive damages claims is DENIED.

---

**13.** *See generally Gares v. Willingboro,* 90 F.3d 720, 726–30 (3d Cir.1996) (Third Circuit predicted that the New Jersey Supreme Court would allow the award of punitive damages against public entities under the New Jersey Law Against Discrimination).